875 F.2d 862
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONSTRUCTION HELICOPTERS, INC., Plaintiff-Appellant,
v.
HELI-DYNE SYSTEMS, INC., Defendant-Appellee.
 Nos. 88-1166, 88-1192.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1989.
 
 1
 Before KRUPANSKY and RALPH B. GUY, Jr., Circuit Judges, JAMES L. GRAHAM, District Judge.*
 
 
 2
 JAMES L. GRAHAM, District Judge.
 
 
 3
 Plaintiff-appellant, Construction Helicopters, Inc. ("plaintiff"), a Delaware corporation having its principal place of business in Canton, Michigan, commenced this action on December 16, 1985 in the United States District Court for the Eastern District of Michigan, Southern Division, against defendant-appellee, Heli-Dyne Systems, Inc. ("defendant"), a Texas corporation. Jurisdiction was based upon diversity of citizenship. 28 U.S.C. Sec. 1332.
 
 
 4
 Plaintiff alleged in its complaint that it is in the business of providing helicopter services to the construction industry. Plaintiff further alleged that defendant represented that it had three Sikorsky S-58 helicopters for sale which would be suitable for use in plaintiff's business. Two of the helicopters were assembled, and one was disassembled for routine maintenance. The helicopters were then in the possession of Helicopteros Marinos, S.A., a South American corporation. After inspecting them in Argentina, plaintiff entered into a written contract with defendant on December 19, 1984 for the purchase of the three helicopters for the total price of $415,000. Defendant made arrangements with Helicopteros Marinos to oversee the loading of the three helicopters at Buenos Aires, Argentina aboard the ocean vessel "Lynx" operated by A. Bottacchi, S.A. de Navegagon. The complaint incorporates by reference the bill of lading, which reflects the receipt of two assembled helicopters and twenty-five crates containing the parts of the disassembled helicopter. Prior to the departure of the vessel, plaintiff purchased a policy of insurance from Americas Insurance Company to insure the helicopters against loss.
 
 
 5
 Plaintiff further alleged that the inspection of the vessel Lynx upon its arrival in Miami, Florida, revealed that only seven of the twenty-five crates of helicopter parts were still on board (eight crates according to the bill of lading). Defendant declined to supply plaintiff with additional parts needed to complete the third helicopter, and plaintiff instituted the present action alleging that defendant, by failing to complete delivery, had breached its contract with plaintiff. Americas Insurance Company was originally named as a defendant, but was voluntarily dismissed as a party on June 5, 1986, after reaching a settlement with plaintiff.
 
 
 6
 On November 11, 1986, defendant moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Following the filing of a memorandum contra by plaintiff and a reply by defendant, the district court granted the motion on February 5, 1987. On February 17, 1987, plaintiff filed a motion to reconsider the district court's order and a motion for leave to amend the complaint. On February 3, 1988, the district court denied the motions for reconsideration and for leave to amend the complaint. Plaintiff now brings this appeal from the orders of the district court.
 
 
 7
 Plaintiff's first and second assignments of error address the district court's ruling on defendant's motion for judgment on the pleadings. Defendant based its motion upon the argument that the facts alleged in plaintiff's complaint were consistent with a "shipment" contract rather than a "destination" contract, and that plaintiff bore the risk of loss of the goods once they were placed on the carrier's vessel. The district court agreed that, accepting the facts alleged in the complaint, plaintiff had pleaded the existence of a shipment contract. The district court further concluded that the only breach of contract alleged in the complaint was the failure to deliver all of the helicopter parts as a result of their loss during shipment, and that since plaintiff bore the risk of this loss, defendant was entitled to judgment on the pleadings.
 
 
 8
 Both the parties in this diversity action rely upon Michigan law. Michigan has adopted the sales provisions of the Uniform Commercial Code. The allocation of risk of loss in the absence of breach of contract is governed by M.C.L.A. Sec. 440.2509(1), which provides:
 
 
 9
 Sec. 2509. (1) Where the contract requires or authorizes the seller to ship the goods by carrier
 
 
 10
 (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation (section 2505); but
 
 
 11
 (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.
 
 
 12
 The provisions of M.C.L.A. Sec. 440.2509(1)(a) apply to "shipment" contracts, where "the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination ..." M.C.L.A. Sec. 440.2504. Subsection (1)(b) governs risk of loss in the case of "destination" contract where the seller is obligated under the terms of the contract to deliver the goods at a particular location. Under the Uniform Commercial Code, a "shipment" contract is regarded as the normal type, and a "destination" contract is seen as the exception. M.C.L.A. Sec. 440.2503 (Official U.C.C. Comment 5). The parties may agree to shift the risk of loss. M.C.L.A. Sec. 440.2509(4). However, in the absence of an express agreement as to which party would bear the loss, and in the absence of an F.O.B. term or any other term whereby the seller has specifically agreed to deliver at a named destination, the contract is a shipment contract. Eberhard Manufacturing Co. v. Brown, 61 Mich.App. 268, 232 N.W.2d 378 (1975). In the case of a shipment contract, the risk of loss passes to the buyer when the seller delivers the goods to the carrier under a reasonable contract for carriage. Eberhard, 61 Mich.App. at 270, 232 N.E.2d at 380. See also Pestana v. Karinol Corp., 367 So.2d 1096 (Fla.App.1979); Sig M. Glukstad, Inc. v. Lineas Aereas Paraguayas, 619 F.2d 457 (5th Cir.1980).
 
 
 13
 Under M.C.L.A. Sec. 440.2509, the transfer of risk of loss is no longer simultaneous with the transfer of title to the property. As the Official U.C.C. Comment 1 to that section states:
 
 
 14
 The underlying theory of these sections on risk of loss is the adoption of the contractual approach rather than an arbitrary shifting of the risk with the "property" in the goods.
 
 
 15
 Similarly, under M.C.L.A. Sec. 440.2401, each provision of Article 2 with regard to the rights and obligations of buyers and sellers applies irrespective of title to the goods except where the provision refers to such title.
 
 
 16
 Thus, in Russell v. Transamerica Insurance Co., 116 Mich.App. 93, 322 N.W.2d 178 (1982), the court held that the trial court erred in equating risk of loss with title. The court in Russell noted, 116 Mich.App. at 98, 322 N.W.2d at 181, that risk of loss under M.C.L.A. Sec. 440.2509 does not necessarily follow title. In Hayward v. Postma, 31 Mich.App. 720, 188 N.E.2d 31 (1971), the court noted that under the Uniform Commercial Code, risk of loss is no longer determined by which party has title to the goods at the time of the loss, but instead by the rules set forth in Sec. 440.2509.
 
 
 17
 Other courts have noted the distinction between risk of loss and the passage of title under the Uniform Commercial Code. In Hughes v. Al Green, Inc., 65 Ohio St.2d 110, 418 N.E.2d 1355 (1981), the Ohio Supreme Court held that under Ohio Revised Code Sec. 1302.53 (comparable to Sec. 440.2509), the risk of loss passed to the purchaser of an automobile upon delivery of the automobile to the purchaser even though the purchaser had not yet acquired title under Ohio's motor vehicle laws. See also Commonwealth Propane Co. v. Petrosol International, Inc., 818 F.2d 522 (6th Cir.1987) (applying Ohio law).
 
 
 18
 Thus, under Michigan law, in determining risk of loss it is immaterial whether title to the helicopters had passed to plaintiff from defendant or Helicopteros Marinos at the time the crates were loaded onto the vessel. Since, according to the complaint, plaintiff and defendant had entered into a contract prior to shipment, the risk of loss provisions of Sec. 440.2509 control.
 
 
 19
 The written contract between the parties contains no provision which requires delivery of the helicopters to a particular destination, or which clearly places on the defendant the risk of loss during shipment. While the bill of lading shows defendant as the consignor, there is no indication that the bill of lading was incorporated into the contract, nor is this single factor sufficient to convert a shipment contract into a destination contract. If the parties intended to shift the burden of risk, they had to do so in clear and unequivocal language. Hayward, 31 Mich.App. at 725, 188 N.W.2d at 33. The district court correctly found that the contract was a shipment contract, and that plaintiff bore the risk of loss once the helicopters were loaded on the vessel.
 
 
 20
 The only breach of contract alleged in the complaint is the loss occasioned by the crates being lost in shipment. The complaint does not allege that the parts were in any way defective when they were delivered to the carrier or that defendant failed to deliver to the vessel all of the parts necessary for a complete helicopter. Plaintiff now maintains that the contract contemplated the delivery of three assembled helicopters. However, this position is not supported by the language of the written agreement, which mentions nothing about assembled helicopters and seems to contradict the complaint which specifically mentions the disassembled state of the third helicopter but does not allege that defendant breached the contract by delivering it in that condition. The complaint alleges no breach which would trigger the application of M.C.L.A. Sec. 440.2510, which governs risk of loss in the case of breach by the seller through non-conforming tender.
 
 
 21
 Plaintiff further alleges on appeal that the trial court erred in granting defendant's motion under Fed.R.Civ.P. 12(c) without first allowing the parties to supplement the record with evidence outside the pleadings. Plaintiff had the opportunity to file supplementary materials with its memorandum in opposition to defendant's motion. The only additional materials filed by plaintiff at that time were an unsworn and unauthenticated letter which did not support plaintiff's position and an affidavit by plaintiff's counsel which did not comply with the requirement of Fed.R.Civ.P. 56(e) that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."
 
 
 22
 Fed.R.Civ.P. 12(c) permits the trial court to treat a motion for judgment on the pleadings as a summary judgment motion under Fed.R.Civ.P. 56 only if "matters outside the pleadings are presented to and not excluded by the court." Here, plaintiff, despite the opportunity to do so, presented no matters outside the pleadings which would be the proper subject of consideration under Rule 56. Plaintiff has demonstrated no abuse of discretion in the district court's determination to consider only the pleadings in ruling on defendant's motion.
 
 
 23
 The district court did not err in granting defendant's motion for judgment on the pleadings.
 
 
 24
 Plaintiff alleges in its third assignment of error that the district court erred in denying its motion for reconsideration of the award of judgment to defendant and for leave to amend the complaint.
 
 
 25
 A motion for reconsideration after judgment is to be treated as a motion under Fed.R.Civ.P. 59(e) to alter or amend judgment. Huff v. Metropolitan Life Ins. Co., 675 F.2d 119 (6th Cir.1982). The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, and is subject to reversal only for an abuse of discretion. Id., 675 F.2d at 122.
 
 
 26
 Here, plaintiff sought to have the judgment set aside to permit amendment of its complaint. The grant or denial of an opportunity to amend is likewise within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While the denial for leave to amend without any justifying reason appearing for the denial constitutes an abuse of discretion, leave may be denied for such reasons as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party and the futility of amendment. Id., 371 U.S. at 182; Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).
 
 
 27
 Plaintiff submitted a proposed amended complaint with its motion for leave to amend. The only substantive amendment is found in paragraph thirty-two, where it is alleged that defendant is in breach of contract for its "failure to deliver in Miami and/or to a carrier in Buenos Aires" the three complete helicopters. The district court concluded that plaintiff's reasons for failing to allege non-conformity in the original complaint were unpersuasive and that the court could not infer from the complaint that the goods were non-conforming. The court below found that the timing of the amendment following dismissal and entry of judgment was in bad faith and would prejudice the defendant.
 
 
 28
 We are unable to find that the district court below abused its discretion in denying plaintiff's motions for reconsideration and for leave to amend the complaint. Plaintiff had ample opportunity prior to the district court's ruling, to move to amend its complaint to rectify the weaknesses addressed by defendant's motion for judgment, yet did not do so, despite the opportunity for discovery. A misconception of the law is not an excuse for the late presentation of an alternative theory of recovery. Troxel Manufacturing Co. v. Schwinn Bicycle Co., 489 F.2d 968 (6th Cir.1973). We also find no abuse of discretion in the trial court's determination that defendant would be prejudiced by the amendment.
 
 
 29
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable James L. Graham, United States District Court, Southern District of Ohio, sitting by designation